IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

McCLAIN & CO., INC.,

   Plaintiff,

v.          CIVIL ACTION NO. 3:10-CV-00065-nkm

MARK DAVID CARUCCI, *et al*.

   Defendants.

## **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 8(a) AND 12(b)(6)**

   The Plaintiff, McClain & Co., Inc., ("McClain"), by and through its undersigned counsel, files its Memorandum in Opposition to Defendants' Motion to Dismiss, and in support thereof states as follows:

### **INTRODUCTION AND SUMMARY OF ARGUMENT**

   This action arises out breaches by Defendant Mark Carucci ("Carucci") of his obligations under a Settlement and Release Agreement, dated as of July 2, 2010, by and between Carucci and McClain (the "Agreement"). The Agreement satisfied claims of criminal and quasi-criminal conduct by Carucci during his employment with McClain in connection with his submission of false payroll records. Carucci's misconduct resulted in McClain paying employees and/or contractors for services and work that they did not perform, and Carucci retained such payments. As part of the Settlement Agreement, Carucci agreed to certain non-competition covenants. McClain filed its Complaint in this action upon discovering that Carucci had violated such non-competition covenants.

Carucci and his new entity, Defendant MPT Rentals, Inc., ("MPT"), now claim that McClain has failed to sufficiently plead its Complaint. However, McClain has clearly pleaded sufficient facts to state and support its claims for breach of contract and conversion against Carucci and its claim for tortious interference with contract against MPT.

Moreover, the Defendants' attempts to challenge the legal enforceability of the non-competition covenants set forth in the Agreement must fail for two broad reasons. First, the Defendants seek to shoehorn the application of legal authority concerning non-competition covenants in the employer-employee context into a private settlement agreement between a company and an individual which is entirely independent of such individual's former employment with the company. The basic policy considerations underpinning Virginia law's disfavor of non-competition covenants in the employer-employee context have little to no relevance in the context of a settlement agreement to resolve claims involving tortious (and, potentially, criminal) conduct, especially in light of the highly-favored position that settlement agreements enjoy at law. Second, it is clearly established in Virginia that the enforceability of non-competition covenants turns on the reasonableness of the specific restrictions. This is a fact-specific inquiry, and appropriate factual determinations can only be made in this case after consideration of certain factual issues, including, the context in which the covenants arose, the nature and scope of McClain's business activities, the nature and scope of Carucci's duties while employed by McClain, and the effect of the restrictions on Carucci's ability to earn a livelihood. Accordingly, such matters cannot be resolved in the Defendants' favor on a motion to dismiss.

For the foregoing reasons, and as more fully set forth below, McClain respectfully requests that this Court deny the Defendants' motion in its entirety.

<u>**STATEMENT OF FACTS**</u>

While McClain would not ordinarily burden the Court with a statement of the facts after the Defendants have already done so, it is necessary because the Defendants' recitation of the facts alleged in the Complaint is so one-sided.

Carucci, a resident of Lyndhurst, New Jersey, is, upon information and belief, a director, officer, shareholder and/or employee of MPT. (Complaint, Paragraph 3).[1] MPT is a New Jersey corporation with its principal place of business in Rutherford, New Jersey. (Complaint, ¶ 4). Upon information and belief, Carucci established MPT together with his grandfather. (Complaint, ¶ 17).

McClain's business of providing traffic maintenance service, under-bridge repairs, construction and equipment sales and rentals, spans several states. (Complaint, ¶ 9). From approximately August 20, 2007 to March 29, 2010, McClain employed Carucci as a Regional Manager to market and perform a variety of services in several northeastern and mid-Atlantic states, including New Jersey, New York and Massachusetts. (Complaint, ¶ 10).

McClain determined that Carucci had submitted false payroll records for work not performed, (Complaint, ¶ 12), and that Carucci was diverting, misappropriating and retaining funds estimated to be greater than $285,000 for services and work that were not performed. (Complaint, ¶ 11).

In order to resolve Carucci's theft, Carucci and McClain, on or about July 2, 2010, entered into the Agreement, a copy of which is attached to the Complaint as

---

[1] Hereafter, (Complaint, ¶ ____).

<u>Exhibit 1</u>. (Complaint, ¶¶ 6, 13). The Agreement provides that McClain will release Carucci from claims relating to his misconduct in exchange for a payment by Carucci of $250,000 and Carucci's compliance with agreed restrictive covenants. (Complaint, ¶ 14).

The restrictive covenants, agreed to by Carucci, were a material part of the Agreement and they materially induced McClain to enter into the Agreement. (Complaint, ¶ 16). They provided that for a period of thirty (30) months beginning on March 29, 2010, Carucci would not engage in "Competing Services" (as such term is defined in <u>Exhibit A</u> to the Agreement) anywhere within the seven-state region of New Jersey, New York, Connecticut, Pennsylvania, Massachusetts, Delaware and Maryland. (Complaint, ¶ 15). Carucci also agreed not to own, serve as a director, officer or manager of, or control any entity or business providing Competing Services in the same seven-state territory. (Complaint, ¶ 15).

Six days after signing the Agreement, Carucci established MPT as a competing business to McClain. (Complaint, ¶ 17). The telephone number advertised on MPT's website is a number that belongs to Carucci. (Complaint, ¶ 20). Since its formation, MPT has conducted services clearly covered by the Agreement, (Complaint, ¶ 17), and MPT owns and maintains traffic safety equipment similar to those owned and maintained by McClain. (Complaint, ¶ 21). MPT currently advertises that it is located in Rutherford, New Jersey, just "5 miles from" New York City, (Complaint, ¶ 19), and that it is a nationwide "one stop shop" for traffic equipment and safety needs, and can dispatch traffic control crews within the same day of a customer's call. (Complaint, ¶ 18).

4

While McClain is not fully aware of the full geographical scope of Carucci's breach of the Agreement, Carucci and MPT, upon information and belief, have been providing competing services in at least New Jersey and New York. (Complaint, ¶ 22).

MPT was aware of the Agreement between McClain and Carucci. (Complaint, ¶ 31). Nevertheless, it induced Carucci to breach the Agreement. (Complaint, ¶ 31).

## LEGAL STANDARD

In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).

Accordingly, a court that is considering a motion to dismiss may choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief. *Iqbal*, 129 S. Ct. at 1950.

5

## ARGUMENT

**I.**     **THE COMPLAINT CONTAINS SUFFICIENT FACTUAL ALLEGATIONS TO SATISFY THE *TWOMBLY/IQBAL* PLEADING STANDARD.**

The Defendants have selectively parsed the factual allegations in the Complaint to claim that there are insufficient factual allegations to support the Complaint. A fairer reading of the Complaint, read in the light most favorable to McClain, reveals that there are no defects in the pleading and this Court should deny the Motion to Dismiss in its entirety.

### A. Breach of Contract

Each of the elements required to plead a claim of breach of contract has been sufficiently pleaded in the Complaint.

#### 1. Existence of a contract

McClain has alleged the facts and circumstances that led the parties to enter into the Agreement and shows the existence of a valid agreement:[2]

- Carucci had committed fraud by billing McClain for work that was not performed (Complaint, ¶ 12);

- McClain discovered the fraud, (Complaint, ¶ 11), and Carucci then agreed to resolve McClain's civil claims relating thereto by entering into the Agreement (Complaint, ¶¶ 6, 13);

- A copy of the Agreement was attached to the Complaint (Exhibit 1) and is available for the Court's review;

---

[2] McClain will address the Defendants' claims as to the validity of the restrictive covenants later in this Memorandum.

- The Agreement contained restrictive covenants, voluntarily agreed to by Carucci, and he signed the Agreement (Complaint, ¶ 15);

- Carucci consulted with counsel prior to executing the Agreement. (Agreement, ¶ 18);

- Carucci participated jointly in negotiating and drafting the Agreement. (Agreement, ¶ 18);

- The Agreement defined the "Competing Services," (Exhibit A to the Agreement), which Carucci agreed not to engage in during the term of the restrictive covenant. (Complaint, ¶ 15); and

- Carucci also agreed not to own, serve as a director, officer or manager of any business providing Competing Services in the northeast region. (Complaint, ¶ 15).

### 2. Breach of the Contract

McClain has also alleged sufficient facts and circumstances to show that Carucci breached the Agreement:

- Just six days after signing the Agreement, Carucci established MPT as a competitor business to McClain. (Complaint, ¶ 17);

- The business, located in Rutherford, New Jersey—a state within the geographic limitation of the Agreement--advertised itself as a "one stop shop" for traffic equipment and safety needs, with the ability to quickly dispatch traffic control crews, and touted itself as just "5 miles" from New York City—also an area within the geographic limitation of the Agreement. (Complaint, ¶¶ 18, 19);

- MPT owns and maintains traffic safety equipment similar to that owned and maintained by McClain. (Complaint, ¶ 21);

- The Complaint shows that that Carucci was linked to MPT in a number of ways, including by the use of his telephone number as the contact number advertised on MPT's website. (Complaint, ¶ 20);

- Each of these acts violated Carucci's agreement not to "provide, perform, or undertake any Competing Service." (Agreement, ¶ 5a);

- Each of these acts violated Carucci's agreement not to own, serve as a director or manager of any business providing Competing Services within the geographical scope of the restrictive covenant set forth in the Agreement (Agreement, ¶ 5a.iii); and

- Each of these acts violated Carucci's agreement not to compete with McClain within the geographical scope of the restrictive covenant set forth in the Agreement.

Thus, contrary to the claims of the Defendants in their Motion, there are more than enough facts to make out a claim for breach of contract that is "plausible on its face."

**B. Conversion**

The Complaint likewise makes out a plausible claim, supported by sufficient facts, of conversion. Section 14 of the Agreement provides that if Carucci breaches the restrictive covenants during the restricted period, McClain then had the right to void the release and pursue Carucci for his initial wrongdoing. The breach of the restrictive covenants described above therefore re-opens the issue of Carucci's initial conversion of funds from McClain. The factual allegations surrounding Carucci's theft are described in

8

paragraphs 10 to 12 of the Complaint. Therein, it is clearly specified that Carucci had

"submitted false payroll records such that employees and/or contractors were paid" for

work that they did not perform, and that Carucci retained the funds paid for this "no

show" work. (Complaint, ¶ 12). The total sum converted was "no less than"

$285,793.00. (Complaint, ¶ 11).

Thus, McClain has adequately pleaded conversion. [3] See, e.g., *PGI, Inc. v. Rathe

Prods., Inc.*, 265 Va. 334 (2003).

**C. Tortious Interference with Contract**

Under Virginia law, a claim for tortious interference with a contract that is not

terminable at will requires proof of the following elements: (1) the existence of a valid

contractual relationship; (2) knowledge of the relationship on the part of the interferor;

(3) intentional interference inducing or causing a breach or termination of the

relationship; and (4) resultant damage to the party whose relationship has been disrupted.

*Duggin v. Adams*, 234 Va. 221 (1987).

The fact that McClain had a valid contractual relationship with Carucci has been

shown above. From the other facts alleged, this Court can clearly infer that MPT is liable

for tortuous interference with that contractual relationship. Specifically, the following

pleaded facts are sufficient to show that MPT knew that Carucci was contractually

prohibited from performing "Competing Services" within a specified geographical region

and, that, in violation thereof, he performed "Competing Services" in some capacity for

MPT:

---

[3] McClain will address the Defendants' claims as to the legal validity of the claim of conversion later in this
Memorandum.

- Carucci is a director, officer, shareholder and/or employee of MPT. (Complaint, ¶ 3);

- MPT was acting together with Carucci and/or as the alter ego of Carucci. (Complaint, ¶ 7);

- Carucci established MPT as a competing business to McClain within days of the Agreement being finalized (Complaint, ¶ 17);

- MPT uses Carucci's telephone number on its Internet website (Complaint, ¶ 20); and

- MPT and Carucci have advertised and provided services in violation of the Agreement's restrictive covenants.

The element of resultant damage is sufficiently pleaded and inferred from the fact that McClain has been deprived of the benefit of its bargain and must now compete with Carucci and MPT within at least New York and New Jersey. The fact that Carucci specifically agreed in Section 13 of the Agreement that his breach of the Agreement would entitle McClain to seek an injunction is *prima facie* evidence of the damage sustained by McClain and its right to seek enforcement of the Agreement through injunctive relief in addition to a claim for monetary damages.

Thus, McClain has pleaded a claim for tortious interference with contract against MPT that more than meets the threshold standards of Rule 12(b)(6) as well as the plausibility standards of *Twombly*/*Iqbal*. To dismiss the claim for tortious interference at this stage for an absence of sufficient factual predicate would require the Court to accept that (1) it was merely an incredible coincidence that Carucci's grandfather decided to open and operate a company offering traffic control services just days after Carucci

contractually agreed not to provide such services; and (2) Carucci has nothing to do with this business despite the fact that a phone number listed in his name was the contact number posted on the website.

### D. The use of "information and belief"

The Defendants also claim that the use within the Complaint of the phrase "upon information and belief" renders the Complaint conclusory and not plausible. This argument is of no moment. First, there is no prohibition on making certain claims upon information and belief. See, *Boy Blue, Inc. v. Zomba Recording, LLC*, 2009 U.S. Dist. LEXIS 84988 (E.D. Va. 2009)( Pleading "upon information and belief is appropriate when the factual basis supporting a pleading is only available to the plaintiff [*sic*] at the time of pleading."); *Arista Records LLC v. Doe*, 604 F.3d 110, 120, (2nd. Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, [citation omitted] does not prevent a plaintiff from "pleading facts alleged 'upon information and belief" where the facts are peculiarly within the possession and control of the defendant, [citation omitted], or where the belief is based on factual information that makes the inference of culpability plausible, [citation omitted.]). Indeed, the *Twombly* Court stated that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." 550 U.S. at 556).

But more to the point, the Complaint uses the phrase "upon information and belief" just three times. Even were this Court to completely disregard the allegations that are limited by information and belief, the claims are nevertheless sufficient. The instances where the phrase is used are:

3. … "Upon information and belief, Carucci is a director, officer, shareholder and/or employee of MPT."

17. … "Carucci, who on information and belief was acting in concert with his grandfather, Frank Carucci, …"

22. … "upon information and belief, Carucci and MPT have provided Competing services in at least both New Jersey and New York."

Were this Court to characterize these claims as "conclusory" or unsupported, the only facts that would fall by the wayside are insignificant facts such as the exact nature of Carucci's role with MPT, (it has already been established by other facts that Carucci worked with MPT to provide Competing Services so his title is irrelevant); that Carucci's grandfather was also involved, (irrelevant to any claim); and that the Competing Services were provided elsewhere than New Jersey and New York, (again, not necessary to show a breach as long as the business was set up and provided services in New Jersey and/or New York).

Thus, the "information and belief" argument is but a red herring in this case. Because the McClain has pleaded sufficient facts, the Motion should be denied in its entirety.

## II. THE COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF FRCP 12(b)(6)

The Defendants' primary assertion that this action should be dismissed under Rule 12(b)(6) is their assertion that, *as a matter of law*, the non-competition covenants of the Agreement must fail. However, they rely solely on cases arising in the employment context which are not applicable in the unique factual situation that prevails in this matter. Indeed, Virginia courts have required development of the factual context of such

Case 3:10-cv-00065-NKM-BWC   Document 21   Filed 01/31/11   Page 12 of 24   Pageid#: 100

agreements before a decision can be made as to their legality and the Motion to Dismiss should be denied.  See, *Capital One Financial Corp. v. Kirkpatrick*, 2007 U.S. Dist. LEXIS 56003, at *6-7 (E.D. Va. Aug. 1, 2007)(holding that dismissal under Rule 12(b)(6) was inappropriate where the court could not conclude "from a purely facial analysis" that a non-competition agreement was unreasonable); *LCM Corp. v. Leach*, 2008 U.S. Dist. LEXIS 4017, (W.D. Va. 2008)(recognizing the factual context of each case and denying motion for summary judgment pending development of further facts).

Here, Carucci's employment with McClain had ceased *prior to* the negotiation and endorsement of the Agreement and ordinary considerations regarding the validity of non-competition agreements simply do not apply in this context.

### A. The validity of the non-competition covenant requires a factual inquiry and cannot be determined at this stage.

In this diversity case, the law of Virginia governs. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  The Supreme Court of Virginia has made clear that a review of a non-competition covenant is a factual review, requiring that the reviewing court review and evaluate the agreement based on the facts developed.  Such agreements must be considered in light of the circumstances in which the agreement came about and the relationship of the parties at the time they entered into the agreement. *Richardson v. Paxton Co*., 203 Va. 790 (1962); *Meissel v. Finley*, 198 Va. 57 (1956).  Generally speaking, when a court reviews restrictive language to determine whether the restriction is reasonable or over-broad, the court should examine "the legitimate, protectable interests of the employer, the nature of the former and subsequent employment of the employee, whether the actions of the employee actually violated the terms of the non-

competition agreements, and the nature of the restraint in light of all the circumstances of the case." *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 494-495 (2002).

Furthermore, as noted in *Modern*, the employer has the burden to show that the non-competition agreement is reasonable. It necessarily follows that the employer must be given the opportunity to present evidence to meet that burden.

**B. The factual context in which the Agreement arose is unique and not amenable to a traditional analysis of a non-competition covenant in the employment context.**

The Supreme Court of Virginia has recognized that the context in which a non-competition agreement arises can influence the validity of the agreement. For example, restrictive covenants contained in contracts regarding the sale of a business are viewed more leniently than those contained in an employment contract between an employer and an employee. *Richardson, supra*, 203 Va. at 795; *Alston Studios, Inc. v. Lloyd V. Gress and Associates*, 492 F.2d 279, 284 (4th Cir. 1974); *Centennial Broad., LLC v. Burns*, 2006 U.S. Dist. LEXIS 70974 (W.D. Va., 2006).

Here, the context is critical, as the Agreement was not the typical employment agreement fraught with the unequal bargaining power inherent in such agreements, and subject to the public policy concerns that have motivated the Supreme Court of Virginia in reviewing past non-competition covenants contained within such agreements. See, *Centennial Broad., LLC v. Burns*, 2006 U.S. Dist. LEXIS 70974 (W.D. Va. 2006). Instead, Carucci negotiated the Agreement after his employment with McClain was over, and negotiated it not for the purpose of obtaining or maintaining employment, but for the entirely different purpose of escaping liability for his misdeeds. The Agreement before this Court makes that clear:

- The Agreement here was formulated ***after*** Carucci's employment with McClain had been terminated. As the Agreement makes clear, Carucci's employment with McClain ended on March 12, 2010, (Agreement, ¶¶ A, 1), and the Agreement was not entered into until July 2, 2010 (Agreement, page 1; endorsements contained on pages 14 and 15);

- Carucci admits in the Agreement that he has consulted with counsel prior to entering the Agreement, and that he participated jointly with McClain in negotiating and drafting the Agreement, (Agreement, ¶ 18);

- Instead of this being an ordinary restrictive covenant found in a typical employment contract, this Agreement was negotiated as part of a settlement after Carucci was caught stealing from McClain, (Agreement, ¶¶ B, C);

- Carucci received concrete benefits under the Agreement, such as a release of claims, a confidentiality clause,[4] and a non-disparagement clause, and freely desired to enter into, the Agreement, so as to avoid liability for his criminal acts, (Agreement, ¶¶ C, 7, 11, 12);

- Carucci was further protected by a revocation clause giving him the right, for any reason, to revoke or rescind the Agreement within seven days of signing the Agreement.

Carucci and McClain had equal bargaining power when the Agreement was signed. Thus, the strict employer-employee standard does not apply. *Foti v. Cook*, 220 Va. 800 (1980)("To determine whether a restrictive provision is unreasonably harsh and oppressive, it is relevant to consider the parties involved, their respective positions, and

---

[4] Indeed, he so valued the confidentiality clause that he immediately took the unusual action of moving to seal the Complaint filed in this case.

the circumstances of the transaction. We are not dealing here with employer and employee but with senior partners who stood upon equal footing at the bargaining table.")

This Agreement is a far cry from the employment agreements that are disfavored in Virginia. Instead, it is more akin to the freely negotiated agreements for sale or transfer of a business that are viewed more favorably. See, *Richardson, supra*, 203 Va. at 795; *Alston Studios, supra; Centennial Broad, supra*. See also, *Brenco Enters. v. Takeout Taxi Franchising Sys*., 2003 Va. Cir. LEXIS 86, (Cir. Ct. Fairfax, 2003)(holding that franchise agreement is more properly viewed under "lesser standard" applied in business sale context).

More particularly, it arises out of a settlement of claims, the agreements to which are highly favored in law. *Duplan Corp. v. Deering Milliken, Inc*., 540 F.2d 1215, 1221 (4th Cir., 1976). While McClain has been unable to locate any precedent from Virginia evaluating non-competition covenants arising within the context of a settlement of a claim, other jurisdictions have recognized that non-competition covenants arising ancillary to settlement agreements are entitled to greater deference than those from an employer-employee context. For example:

- *Herndon v. Eli Witt Co*., 420 So. 2d 920, 923 (Fla. Dist. Ct. App. 1st Dist. 1982):

  The instant covenant not to compete was ancillary to a valid settlement agreement and provided valuable consideration in return for Eli Witt's voluntarily dismissing its complaint. Herndon doubtless desired to avoid a lengthy litigation; Eli Witt obviously desired that its business security be protected from one who at liberty could do the company immediate harm should he disclose confidential corporate clients, information and trade secrets. Just as the Massachusetts Supreme Court in the remarkably similar case of *Novelty Bias Binding Company v. Shevrin*, concluded, we hold, under the circumstances disclosed, considerations of public policy, equity and fair dealing favor enforcement of the covenant if it is otherwise reasonable.

- *Cranston Print Works Co. v. Pothier*, 848 A.2d 213, 220 (R.I. 2004):

  Initially, we note that these particular non-compete covenants are somewhat unusual because they are included in a settlement agreement arising from a post-employment dispute, as opposed to an employment contract or to a contract for the sale of a business. Despite this circumstance, we hold that the noncompetition provisions are ancillary to an otherwise valid contract because they are subordinate to a settlement agreement and to a mutual release resolving contested litigation between Cranston Print, a former employer, and Nikoloff, a former employee. That litigation and its settlement addressed material issues besides the non-compete covenants that are at issue here. Although such non-compete covenants are more often present in contracts for employment, for the sale of a business, and for partnerships and joint ventures, courts in other jurisdictions have labeled such noncompetition covenants in settlement agreements as ancillary to the settlement agreement itself. See *Herndon v. Eli Witt Co*., 420 So. 2d 920, 923 (Fla. Dist. Ct. App. 1982) ("The instant covenant not to compete was ancillary to a valid settlement agreement * * *."); *Justin Belt Co., v. Yost*, 502 S.W.2d 681, 684, 17 Tex. Sup. Ct. J. 88 (Tex. 1973) (commenting that noncompetition covenant in settlement agreement was not only ancillary to a permissible transaction, but "was ancillary to an agreement highly favored by the courts"); *Lehrer v. State Department of Social and Health Services*, 101 Wn. App. 509, 5 P.3d 722, 725 (Wash. Ct. App. 2000) (upholding noncompetition provision under settlement and release agreement). We concur with this approach.

- *Justin Belt Co. v. Yost*, 502 S.W.2d 681, 684 (Tex. 1973):

  The noncompetition covenant at issue was ancillary to an agreement that settled the dispute between Justin and his former employees and accomplished a termination of the pending litigation. This was no doubt brought about by the desire of Souder and Yost, and Lama as well, to get out from under the pending suit; and Justin, of course, wanted protection for its trade secrets and employees. There is no claim that the agreement was not reached in good faith and in fairness to the parties. Not only was the covenant ancillary to a permissible transaction, *Novelty Bias*, WILLISTON supra; it was ancillary to an agreement highly favored by the courts. See, *Houston and T.C.R. Co. v. McCarty*, 94 Tex. 298, 60 S.W. 429 (1901); *Gilliam v. Alford*, 69 Tex. 267, 6 S. W. 757 (1887); *Camoron v. Thurmond*, 56 Tex. 22 (1881); *Texas Eastern Transmission Corp. v. Federal Trade Commission*, 306 F.2d 345 (5th Cir. 1962).

Because Carucci's agreement not to compete was likewise part of a settlement agreement that is "highly favored" in our courts, see *Crandell v. United States*, 703 F.2d 74, 75 (4th Cir., 1983)("Public policy, of course, favors private settlement of disputes."),

the Agreement must be viewed in the more sympathetic light of the favoritism that our courts accord settlement agreements. Carucci was not an employee of McClain when he negotiated the Agreement. He was free to walk away, but chose instead to accept the benefits that the Agreement accorded. He should not be permitted to walk away from his commitments now.

Because of the unique facts leading to the Agreement, and because Virginia law requires that a reviewing court consider those facts as well as the positions of the parties, this Court should deny the Defendants' Motion in its entirety.

### C. The non-competition covenant is valid on its face.

As explained above, this Court should deny the Motion to Dismiss as inappropriate at this stage. Should the Court disagree, the Agreement nevertheless meets the standards for an unenforceable non-competition covenant under the circumstances of this case.

As review involves a factual analysis, the limitations imposed on restrictive covenants must not be considered as separate and distinct issues, but must instead be considered together. *Simmons v. Miller*, 261 Va. 561, 581 (2001). That being said, McClain will review the limitations separately.

### 1. Duration of the restraint

The 30-month restraint found in the Agreement is unremarkable and Defendants have not challenged it.

### 2. Geographic scope

The Supreme Court of Virginia has upheld broad-ranging restrictions arising from such agreements. In *Blue Ridge Anesthesia v. Gidick*, 239 Va. 369 (1990), the Court

upheld a restriction that lasted for three years and included four states and the District of Columbia.  In approving the restrictions, the court noted that the geographical limitation was related to the "territories serviced by" the former employees covered by the restrictive covenant.  In this case, the restrictions likewise cover only the territory that was assigned to Carucci.  The Complaint makes clear that Carucci was employed as a Regional Manager to service several northeastern and mid-Atlantic states, including New Jersey, New York and Massachusetts, (Complaint, ¶ 10).   Notably, the region covered by the non-competition to which Carucci agreed was precisely these states.   (Agreement, ¶ 5c.)  Thus, like in *Gidick*, Carucci was not being excluded from competing in McClain's entire market—only those states in which Carucci acted as regional manager.

Moreover, to repeat, Virginia permits an even broader geographic ban when reviewing restrictive covenants arising outside of the employment context.  See, *Rash v. Hilb, Rogal & Hamilton Co.*, 251 Va. 281 (1996) (requiring no geographic scope).  Even in the employment context, agreements with no geographic scope have been approved when the parties came to the agreement with equal bargaining power.  See, *Foti, supra*, 220 Va. at 806 (no geographic limitation when agreement was made between senior partners in an accounting firm who were "privy to all the information gathered . . . in connection with clients serviced" by the former employer).   The Agreement in this case does not arise in the employment context.  Carucci and McClain freely bargained for the terms of the Agreement *after* Carucci had left the employ of McClain, and for the purpose of settling the matter of Carucci's theft from McClain.  Carucci negotiated the Agreement and had a lawyer to help him review the Agreement.  Unlike an employee

who must accept such an agreement in order to be employed, Carucci could have walked away.  In this context, the more lenient standard should apply.

### 3.  Scope of Activity Restricted

Carucci agreed in paragraph 5a. of the Agreement that he was not to be engaged in any way in providing any competing services which were defined in Exhibit A to the Settlement and Release Agreement.  The five numbered paragraphs of Exhibit A limit respectively:

1.  Services related to the maintenance and protection of traffic;

2.  Selling the specifically listed traffic equipment;

3.  Leasing the specifically listed traffic equipment;

4.  Construction services related to under-bridge work; servicing spans and bridge mounts; electrical/lighting services for roadways;

5.  Providing the listed bridge services.

These restrictions, specifically limited to the provision of competing services as clearly defined, are not overly oppressive.  For example, in *Gidick*, the court approved a very broad covenant forbidding that the employee "**open or be employed by or act on behalf of any competitor of Employer which renders the same or similar services as Employer, within any of the territories serviced by agent of Employer […].**  *Gidick*, at 370-371 (emphasis added).   Unlike the broad unspecified restrictions approved in *Gidick*, here the parties themselves set out to specify in detail what services were meant by the "competing services" prohibited under the Agreement.  (See Exhibit A to the Agreement).   The detailed definition of "competing services" differentiates the

Agreement from that found defective in *Roto-Die Co. v. Lesser*, 899 F.Supp. 1515 (W.D. Va. 1995).

Here, Carucci agreed to be proscribed from competing with the McClain but only in the provision of the same services provided by McClain. Carucci claims that this provision prohibits him from working in any aspect of the traffic industry, that he would not be permitted to provide manual labor to a state department of transportation, work in law enforcement, or security, or even direct traffic at a concert or sports venue. Despite the parade of horribles listed by the Defendants in their Memorandum, Carucci agreed only to limit himself from providing services similar to McClain's and was free, under the terms of the Agreement, to provide services on roadways that did not involve the specific items listed as Competing Services. For example, Carucci could work on a paving crew, as long as it did not involve paving under bridges or overpasses; Carucci could work for a crew that builds new stretches of road, again as long no bridges or overpasses were constructed.

Under the terms of the Agreement, Carucci was not without employment options. Thus, the terms of the Agreement comply with the requirements of Virginia law and the Motion to Dismiss should be denied.

**D. Regardless of this Court's determination as to the validity of the non-competition covenant, the remainder of the Agreement remains in force and McClain's claim for conversion should be allowed to proceed.**

The Defendants argue that it is somehow against public policy for parties to agree to a savings clause like that contained in paragraph 14 of the Agreement. Defendants do not cite any cases that hold that, with respect to a restrictive covenant, parties may not freely bargain for what rights and obligations may exist should a court find that the

agreement is somehow invalid. The fact that parties would contemplate the need for a savings clause is not surprising given that they are disfavored in the employment context.

The Defendants muddy the issue by citing cases holding that a party may not insert into a contract phrases forbidding legal challenge or judicial review. See Memorandum, page 18. To be clear, no part of this Agreement forced Carucci to agree not to challenge the validity of the restrictive covenant. The Agreement does not assert that Carucci will not challenge the restrictive covenant; it does not state that Carucci will be bound by the terms of the restrictive covenant even if a court finds it invalid.

Instead, paragraph 14 of the Agreement represents an attempt by the parties to anticipate risk and McClain and Carucci simply negotiated a clause that defined the rights of the parties should a court find the restrictive covenant invalid. Paragraph 14 provides that if Carucci breaches the restrictive covenants, and they cannot be enforced, then McClain has the right to sue Carucci for the bad acts covered in the Agreement. This is not an attempt to insulate the restrictive covenant from judicial review, but instead represents an agreement about McClain's rights should the non-competition covenant fail. The Defendants cite no cases stating that parties may not anticipate risk and provide against it in their contracts.

That the Agreement remains valid and should remain valid is shown by the following example: If instead of a waiver of its rights to seek redress for Carucci's theft, McClain had instead agreed to pay Carucci $100,000 for a non-competition agreement, and provided that if the agreement was invalidated for any reason, Carucci had to repay the $100,000. In that circumstance, no one could logically argue that McClain was not entitled to seek the money due in that circumstance. Here, instead of paying $100,000,

McClain agreed to forego its right to seek full restitution for the theft in exchange for partial payment and the non-competition. The non-competition was a material part of the bargain, (Complaint ¶ 16), and in its absence, McClain is entitled to seek what it was due in the absence of any agreement.

### E. The tortious interference with contract claim is sufficiently pleaded under Rule 12(b)(6).

Defendants argue that because Count III for tortious interference is inconsistent with certain of the factual pleadings in the Complaint, it must be dismissed. What Defendants ignore is that Rule 8(d)(2) specifically permits pleading in the alternative, and Rule 8(d)(3) permits stating "as many separate claims… as it has, regardless of consistency."

At this point in time, where no discovery depositions have been taken, McClain lacks exact information about exactly who formed MPT. As the Complaint makes clear, just six days after Carucci agreed not to compete with McClain in the restricted region, MPT was created, (Complaint, ¶ 17), offering virtually the same services in virtually the same region. If Carucci's grandfather formed the company, and only employed Carucci, knowing of the restrictive covenant, then MPT did tortiously induce Carucci to breach the contract. Certainly, given the information that McClain has access to at this stage, the pleading suffices. See, *Boy Blue, supra*; *Arista Records, supra*.

Consequently, this Court should deny the Motion to dismiss the tortious interference with contract claim.

## CONCLUSION

Because the Complaint is properly pleaded in all respects, McClain respectfully

requests that this Court deny the Defendants' Motion to Dismiss in its entirety.

Respectfully Submitted,

McCLAIN & CO., INC.
By Counsel

/s/ Richard Armstrong
PATRICK C. ASPLIN (VSB #46620)
RICHARD ARMSTRONG (VSB #46053)
Of Lenhart Obenshain PC
100 10th Street N.E., Suite 300
Charlottesville, Virginia 22902
(434) 220-6105
(434) 220-6102 (Fax)
pca@lolawfirm.com
rca@lolawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2011, I electronically filed the foregoing
*Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Pursuant to
FRCP 8(a) and 12(b)(6)* with the Clerk of the Court using the CM/ECF system which
will send notification of such filing to the following:

Robert Craig Wood, Esquire
Melissa Wolf Riley, Esquire
McGuire Woods LLP
Court Square Building
310 4th Street, N.E. Suite 300
Charlottesville, VA 22902
cwood@mcguirewoods.com
mriley@mcguirewoods.com
Counsel for Defendants

/s/ Richard Armstrong
Counsel for Plaintiff

LO.274587.DOC