IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MCCLAIN & CO., INC., *Plaintiff,* v. MARK DAVID CARUCCI, and MPT RENTALS, INC., *Defendants.* | CASE NO. 3:10-cv-00065 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Plaintiff McClain & Co., Inc. ("McClain") is suing its former employee, Mark David Carucci, for breach of a covenant not to compete contained within a post-employment settlement and release contract formed between the two parties (count one), and for conversion (count two). McClain is also suing MPT Rentals, Inc. ("MPT"), a New Jersey corporation associated with Carucci, for tortious interference with the contract (count three). Each of the claims is brought under Virginia law, and the action is in federal court on diversity jurisdiction.

This matter is before the Court upon Defendants' Motion to Dismiss, filed January 7, 2011 (docket no. 12). I have fully considered the arguments and authorities set forth in the parties' filings, as well as those presented at the April 18, 2011 hearing. For the following reasons, I will deny Defendants' motion with regard to the breach of contract claim and conversion claim, and I will grant Defendant's motion without prejudice with regard to the tortious interference with contract claim.

I. BACKGROUND

McClain, a Virginia corporation, engages in a wide range of business activities in several

1

states, including traffic maintenance services, under-bridge repairs, construction, and equipment sales and rentals. From August 2007 until March 29, 2010, Carucci, a New Jersey resident, was employed by McClain as a regional manager to market and perform a variety of services on behalf of McClain in several northeastern and mid-Atlantic states, including New Jersey, New York, and Massachusetts. During Carucci's employment with McClain, Carucci allegedly wrongfully diverted and misappropriated approximately $285,793 of company funds. (Pl.'s Compl. ¶ 11.) Carucci allegedly "submitted false payroll records such that employees and/or contractors were paid by McClain for services and work that they did not perform and the payments made by McClain were retained by Carucci." (*Id.* ¶ 12.)

About three months after Carucci's employment with McClain ceased, Carucci and McClain entered into a Settlement Release and Agreement ("Agreement"). The Agreement provides that McClain releases Carucci from claims relating to his supposed misconduct in exchange for a payment by Carucci of $250,000 (Agreement ¶ 3), Carucci's return of equipment, records, and confidential information (*id.* ¶ 4), and Carucci's compliance with a noncompete restrictive covenant and a non-solicitation restrictive covenant (*id.* ¶ 5). The Agreement also contains a confidentiality provision (applicable to both parties), a non-disparagement provision (applicable to both parties), a waiver by Carucci of all employment claims against McClain, and a provision allowing for the revocation of the Agreement by Carucci within seven days of its signing. (*Id.* ¶¶ 11, 12, 15, 17.) Carucci was represented by counsel in negotiating and signing the Agreement. Carucci has paid McClain the agreed upon $250,000.

The noncompete covenant, which is the subject of this suit, provides:

> Carucci agrees that for a period of thirty (30) months immediately following the Termination Date (the "Restricted Period"), he shall not (i) provide, perform, or undertake any Competing Services anywhere in the Territory, whether in his individual capacity for

> his own account or benefit, or as an employee, officer, director, manager, contractor, consultant, agent, shareholder, partner, joint venture partner, or representative of any other person or entity; (ii) instruct, hire, engage, or contract with any other person or entity to provide, perform, or undertake any Competing Services anywhere in the Territory; and (iii) own (whether solely or with others), serve as a director, officer or manager of, or control (whether by voting rights or otherwise) any entity or business that provides, performs or undertakes Competing Services anywhere in the Territory.

(*Id.* ¶ 5.) "Competing Services" is defined in a two-page appendix to the Agreement, and includes "[a]ll services, which require the supplying of labor, equipment and material relating to the maintenance and protection of traffic[;]" selling, leasing, or renting specified traffic equipment or items; construction services related to under-bridge infrastructure, roadway structures, or roadway signage; certain electrical or communication services for roadways; and certain bridge services. (*Id.* ex. A.) "Territory" is defined as the states of New Jersey, New York, Connecticut, Pennsylvania, Massachusetts, Delaware, and Maryland. (*Id.* ¶ 5.)

McClain alleges that six days after signing the Agreement, "Carucci, who on information and belief was acting in concert with his grandfather, Frank Carucci, established MPT as a competing business to McClain." (Pl.'s Compl. ¶ 17.) The precise nature of Carucci's relationship with MPT is unclear. McClain alleges that Carucci is "a director, officer, shareholder and/or employee of MPT." (*Id.* ¶ 3.) McClain also alleges that MPT has acted as the alter ego of Carucci. (*Id.* ¶ 7.) MPT's phone number allegedly belongs to Carucci. (*Id.* ¶ 20.) Carucci and MPT allegedly conduct and have conducted services in New Jersey and New York that fall within the Competing Services proscribed by the noncompete provision. (*Id.* ¶¶ 17, 22.) Carucci and MPT allegedly advertise that they are "a 'one stop shop' for traffic equipment and safety needs, and can dispatch traffic control crews within the same day of a call from a customer." (*Id.* ¶ 18.) They also advertise that MPT is located in New Jersey, just five

miles from New York City.  (*Id.* ¶ 19.)  According to the complaint, "Carucci and MPT own and maintain traffic safety equipment similar to those owned and maintained by McClain."  (*Id.* ¶ 21.)

## II. APPLICABLE LAW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005).  In sum, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Consequently, "only a complaint that states

4

a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.[1]

The parties agree that Virginia law should apply to each of the claims.

### III. DISCUSSION

#### A. Breach of Contract

Plaintiff McClain brings the breach of contract claim against its former employee Carucci for violation of the noncompete covenant in the Agreement. Carucci moves to dismiss the claim on two grounds: (1) the pleadings do not satisfy standards under Federal Rule of Civil Procedure 8; and (2) the complaint fails to state a claim for which relief can be granted because the noncompete covenant is unenforceable as a matter of law.

In his Rule 8 argument, Carucci contends that the allegations in the complaint are too conclusory and factually unsupported to state a claim for relief for breach of contract. Carucci focuses on the supposedly conclusory nature of the following allegation: "[c]ontrary to his contractual obligations in the Agreement, six days after he signed the Agreement, Carucci, who on information and belief was acting in concert with his grandfather, Frank Carucci, established MPT as a competing business to McClain." (Agreement ¶ 17.) Carucci's argument fails because the allegation that Carucci established a business on a certain date that competed with McClain's business is sufficiently specific and factual in nature to pass muster under Rule 8. It is not a mere label, bald assertion, or conclusion of law. It is supported by, and consistent with, the following factual allegations: MPT and Carucci share a phone number, MPT advertises traffic services and products, MPT is based out of New Jersey and advertises that it operates nationwide

---

[1] In evaluating a motion to dismiss, the court may consider documents extrinsic to the complaint if they are "integral to and explicitly relied on in the complaint" and if there is no dispute as to their authenticity. *See Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 (4th Cir. 2009) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *see also Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005). Carucci asks that the Court consider the Agreement. As there is no objection, and McClain attached the document as an exhibit to the original complaint, I will consider it in evaluating the motion.

(which places its services within the restricted territory), and MPT owns traffic equipment similar to that owned by McClain. Taking these allegations as true, as the Court must, it is plausible that Carucci took actions that breached the noncompete agreement, *i.e.*, that he established a company that provided traffic services prohibited by the noncompete covenant within the proscribed geographical region.

Carucci maintains that the use of the qualifier "upon information and belief" in the complaint renders the allegations employing that term factually deficient. Pleading "upon information and belief" is appropriate when the factual basis supporting a pleading is only available to the defendant at the time of pleading. *See*, *e.g.*, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (holding that pleading "upon information and belief" is appropriate when the information is in the opposing party's possession); *Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004) ("'[I]nformation and belief' pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant"). Pleading "upon information and belief" where the belief is based on factual information that makes the inference of culpability plausible may also be appropriate. *Arista Records LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) (citing *Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")).

McClain's allegation "on information and belief" that Carucci acted in concert with his grandfather in establishing MPT is acceptable because that information may not have been in McClain's possession when the complaint was filed. The allegation "upon information and belief" that Carucci and MPT have provided competing services in at least New Jersey and New York is based on advertisements about MPT's location in New Jersey and proximity to New

York, which makes the inference that they serve those areas plausible. The final instance in which McClain pleads "upon information and belief" concerns Carucci's employment status with McClain, which is information that is more accessible to Defendant, and is not necessary for the complaint to survive Rule 8 scrutiny.

Carucci's more substantial attack on the breach of contract count relates to the enforceability of the noncompete covenant in the Agreement. To make out a breach of contract claim under Virginia law, there must be a legally enforceable obligation of a defendant to a plaintiff. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009). A noncompete agreement is a disfavored restraint on trade that will be enforced only if it is reasonable. *Simmons v. Miller*, 261 Va. 561, 580-81, 544 S.E.2d 666, 678 (2001). "Whether or not the restraint is reasonable is to be determined by considering whether it is such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interest of the public." *Merriman v. Cover, Drayton & Leonard*, 104 Va. 428, 436, 51 S.E. 817, 819 (1905). In considering the enforceability of restraints on trade, Virginia courts focus on the reasonableness of the restraint because "the law looks with favor upon the making of contracts between competent parties upon valid consideration and for lawful purposes," and therefore "courts are averse to holding contracts unenforceable on the ground of public policy." *Lipps v. First Am. Serv. Corp.*, 223 Va. 131, 137, 286 S.E.2d 215, 219 (1982).

Noncompete agreements formed between employers and employees as part of the employment contract are subject to more careful scrutiny. To determine the reasonableness of a noncompete agreement ancillary to an employment contract, courts ask if the covenant "is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." *Omniplex World*

*Servs. Corp. v. U.S. Investigations Servs.*, 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005). The trial court must consider the duration of the restraint, the geographic scope of the restraint, and the scope and extent of the activity being restricted. *Simmons*, 261 Va. at 581, 544 S.E.2d at 678. The employer bears the burden of proof and any ambiguities in the contract will be construed in favor of the employee. *Omniplex World Servs.*, 270 Va. at 249, 618 S.E.2d at 342. Judicial review of noncompete agreements formed in the employer-employee context is intended to "strike a balance between an employee's right to secure gainful employment and the employer's legitimate interest in protection from competition by a former employee based on the employee's ability to use information or other elements associated with the employee's former employment." *Id.*

Carucci contends that the more rigorous standard developed to review noncompete agreements incident to an employment contract should apply to the present covenant not to compete, which was formed between McClain and Carucci after the employment relationship had terminated. In contrast, McClain takes the position that the justification for exercising heightened scrutiny of noncompete covenants in employment agreements does not apply where the noncompete covenant is part of a post-employment settlement and release contract. A noncompete covenant of the type at issue in this action has yet to be reviewed in Virginia. Where a contract for the sale of a business between a vendor and buyer contains a covenant not to compete, however, greater latitude is allowed in determining the covenant's reasonableness than when the covenant relates to an employment contract. *Alston Studios, Inc. v. Lloyd V. Gress & Assocs.*, 492 F.2d 279, 284 (4th Cir. 1974); *Richardson v. Paxton Co.*, 203 Va. 790, 795, 127 S.E.2d 113, 117 (1962); *Roto-Die Co. v. Lesser*, 899 F. Supp. 1515, 1519 (W.D. Va. 1995); *Centennial Broad., LLC v. Burns*, No. 6:06-cv-00006, 2006 U.S. Dist. LEXIS 70974, at *27-29

2006 WL 2850640 (W.D. Va. Sept. 29, 2006). The scope of permissible and enforceable restraints "is more limited between employer and employee than between seller and buyer." *Richardson*, 203 Va. at 795, 127 S.E.2d at 117. This difference in standards is justified by the fact that employees often have comparatively little bargaining power and less leverage for negotiating a fair deal, while the sale of a business more typically involves sophisticated parties coming to an agreement after an arms-length negotiation process. *Centennial Broad.*, 2006 U.S. Dist. LEXIS 70974, at *28. Restrictions on an employee's "means of procuring a livelihood for himself and his family" are more likely to threaten public policy interests than restrictions on a seller, "who usually receives ample consideration for the sale of the good will of his business." *Id.* at *28-29 (quoting C. T. Drechsler, Annotation, *Enforceability of covenant against competition, ancillary to sale or other transfer of business, practice, or property, as affected by duration of restriction*, 45 A.L.R.2d 77, at 4c (1956)).

The same approach is taken in the context of a covenant not to compete between partners in a professional firm. *See Foti v. Cook*, 220 Va. 800, 806, 263 S.E.2d 430, 433 (1980) ("To determine whether a restrictive provision is unreasonably harsh and oppressive, it is relevant to consider the parties involved, their respective positions, and the circumstances of the transaction. We are not dealing here with employer and employee but with senior partners who stood upon equal footing at the bargaining table."); *Meissel v. Finley*, 198 Va. 577, 583, 95 S.E.2d 186, 191 (1956) (upholding noncompete agreement among partners in insurance firm). Other jurisdictions considering covenants not to compete incident to settlement agreements have held that public policy favors enforcing such covenants as long as they are otherwise reasonable. *See Herndon v. Eli Witt Co.*, 420 So. 2d 920, 923 (Fla. Dist. Ct. App. 1982) (reasoning that settlement agreement contained valuable consideration, with former employee avoiding lengthy litigation and former

9

employer protecting confidential business information); *Justin Belt Co. v. Yost*, 502 S.W.2d 681, 684 (Tex. 1973) (noting that covenant not to compete was ancillary to settlement agreement, which is highly favored by courts).

Under the circumstances presented in the instant matter, a requirement of reasonableness is adequate to afford fair protection to the interests of both parties to the contract and the public, and I decline to employ the more restrictive standard designed to review covenants contained in employment contracts. The primary purpose of the Agreement was to settle McClain's claims of embezzlement against Carucci, not to regulate the terms of Carucci's employment, which had ceased before the Agreement was formed. The Agreement was a result of an arms-length negotiation in which Carucci was represented by counsel. (*See* Agreement ¶ 18 (stating that the parties "participated jointly in the negotiation and drafting of this Agreement and that in the event that an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties . . . .".) The Agreement contained valuable consideration for both parties. In exchange for paying $250,000 and submitting to the restrictive covenants, Carucci avoided liability for his acts and benefited from a confidentiality clause, a non-disparagement clause, and a seven-day revocation clause. This was not a "take it or leave it" situation in which an employee must agree to a noncompete covenant in order to secure a job. Rather, bargaining power was more equally distributed, with Carucci allegedly in possession of over $285,000 in company funds, and McClain entitled to sue Carucci for their recovery or seek other legal remedies. Finally, the noncompete covenant is one element of an agreement settling a private dispute, which, as a highly favored agreement in the law, should not be subjected to undue limitations on its enforceability. *See Crandell v. United States*, 703 F.2d 74, 75 (4th Cir. 1983); *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1221 (4th Cir. 1976).

In sum, the noncompete covenant must be reasonable to be enforceable. It must be "such only as to afford a fair protection to the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public." *Merriman*, 104 Va. at 436, 51 S.E. at 819. Defendant Carucci urges the Court to find that, as a matter of law, the noncompete covenant is unreasonable because the scope of the restricted services is overbroad, essentially foreclosing Carucci from working in any aspect of the traffic industry. Although the enforceability of a covenant not to compete is a question of law, *Omniplex World Servs.*, 270 Va. at 249, 618 S.E.2d at 342, such a determination is made in light of the facts of each case, *Roto-Die*, 899 F. Supp. at 1519. But a court "need not determine the exact reach of the covenant in order to conclude it is overbroad. The fact that its reach is so difficult to determine and may so easily exceed in effect the permissible reach renders the covenant overbroad." *Roto-Die*, 899 F. Supp. at 1521 (quoting *Power Distribution, Inc. v. Emergency Power Eng'g, Inc.*, 569 F. Supp. 54, 57-58 (E.D. Va. 1983)). The noncompete covenant in the Agreement is not facially overbroad. The forbidden services and activities are limited to the specific types of activities enumerated in the Agreement. These activities encompass the provision of labor or equipment for traffic services, the sale or lease of traffic equipment, under-bridge and roadway construction services, and bridge services. There is no argument that McClain does not actually provide these types of services. Thus, the competing services are sufficiently circumscribed to survive Carucci's facial attack on a motion to dismiss.

### B. Conversion

The second count of McClain's complaint sounds in Virginia tort law for conversion of the $285,793 in company funds that Carucci allegedly embezzled while employed by McClain. Although the Agreement released Carucci from liability for those funds, it contained a clause

providing for the cancellation of the release from liability upon determination of a breach of the noncompete covenant. Specifically, the cancellation clause[2] states as follows:

> in the event that any time prior to the expiration of the Restricted Period [Carucci] performs or engages in any act or activity that is prohibited under the terms of [the noncompete or non-solicitation covenants], as determined by an arbitrator or a court of competent jurisdiction, *the Company shall have the right to declare the releases set forth in Section 7 above to be null and void*, in which event, the provisions of Section 7 above shall become null and void and no longer binding on the Company and the Company may pursue all available legal and equitable remedies against Carucci relating to the Alleged Wrongful Acts regardless of, and notwithstanding, any ruling, determination, judgment or order, by an arbitrator or court of competent jurisdiction that the [covenants] are unenforceable, and/or that any contravention by Carucci of the terms of [the covenants] does not constitute a violation or breach of this Agreement on the ground that such terms are unenforceable or invalid.

(Agreement ¶ 14) (emphasis added). Section 7 of the Agreement contained McClain's release of Carucci's liability for the alleged misappropriation of company funds.

Assuming McClain's allegations that Carucci breached the noncompete covenant are true, Carucci presses for dismissal of the conversion claim because the cancellation clause is legally impermissible. Under Virginia common law, a partial, non-material failure in performance generally does not justify termination of a contract in full. *See Bolling v. King Coal Theatres, Inc.*, 185 Va. 991, 996-97, 41 S.E.2d 59, 62 (1947) ("Ordinarily, rescission will not be granted for breach of a contract which is not of such substantial character as to defeat the object of the parties in making the contract."); *id.* ("Rescission may be granted for a failure of consideration where such failure defeats the purpose of the instrument, . . . but where a party

---

[2] The terms "cancellation" and "rescission" have been used in the past to denote termination of a contract and can be subject to confusion. *United States v. Scruggs*, 356 F.3d 539, 545 (4th Cir. 2004). In current usage, "rescission" refers only to the abandonment of a contract by mutual consent, and "cancellation" occurs when one party puts an end to a contract because of the breach of the other party. *Id.* Here, McClain seeks to cancel its promise to acquit Carucci of all liability for the alleged embezzlement, not to terminate the entire contract.

wishes to rescind a contract on the ground of failure of consideration, if the failure has been partial only and a subsisting executed part performance is in his hands, and there has been no fraud on the part of the other, rescission will not be allowed.") (quotations omitted); *Neely v. White*, 177 Va. 358, 366, 14 S.E.2d 337, 341 (1941) ("Before partial failure of performance of one party will excuse the other from performing his contract or give him a right of rescission, the act failed to be performed must go to the root of the contract."). Carucci argues that a breach of the noncompete covenant would be a partial, non-material failure in performance, for which a subsisting executed part performance is in McClain's hands. In support, Carucci points to the substantial performance of which McClain has already had the benefit, which includes Carucci's compliance with the obligation to pay $250,000, the return of equipment, records, and confidential information requirement, the waiver of employment claims, the non-disparagement covenant, the confidentiality provision, and the agreement to indemnify McClain from all fines and claims arising out of the alleged embezzlement.

Although Carucci establishes that a breach of the noncompete covenant would only be a partial failure of performance, I am not convinced that such a breach would be immaterial. Carucci cites no authority for the proposition that breach of a noncompete covenant is an immaterial offense. A breach is material when it "deprive[s] the injured party of the benefit that the party justifiably expected from the exchange." *RW Power Partners, L.P. v. Va. Elec. & Power Co.*, 899 F. Supp. 1490, 1496 (E.D. Va. 1995) (quoting E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS, *Material Breach and Suspension*, § 8.16). Farnsworth explains that "it is in society's interest to accord each party to a contract reasonable security for the protection of that party's justified expectations. But it is not in society's interest to permit a party to abuse this protection by using an insignificant breach as a pretext for avoiding its

13

contractual obligations." *Id.* (quoting FARNSWORTH, *Power to Suspend Performance and Terminate the Contract*, § 8.15). The noncompete covenant conferred a benefit on McClain that it reasonably expected from the exchange. In the Agreement, McClain did not receive the full amount of money allegedly misappropriated from it. Instead, McClain received $250,000, as well as the promise to comply with several provisions and restrictive covenants, including the covenant not to compete. While it is unnecessary to tease apart the exact value contributed by the noncompete covenant, it suffices that the covenant was an explicitly bargained for component of a package of promises that induced McClain to settle its claim for conversion. (*See* Pl.'s Compl. ¶ 16 ("The . . . restrictive covenants materially induced McClain to enter into the Agreement.").) According to the allegations in the complaint, which I accept as true, six days after Carucci entered into the Agreement, he formed a competing traffic services business and has violated and continues to violate the terms of the noncompete covenant. I have no reason to believe these actions were taken in good faith or that Carucci was prepared to cure them. *See RW Power Partners*, 899 F. Supp. at 1497-98 (considering likelihood failure to perform would be cured and extent to which failure to perform comported with standards of good faith and fair dealing in determining materiality of breach). This breach was a plain violation of the expectations of both parties; it was not an insignificant infraction alleged by McClain as a pretext for nullifying its release of liability.

The supposed breach of the noncompete covenant was also material as a matter of contract. In the Agreement, the parties explicitly described the particular violation that would permit McClain to declare the release of liability null and void, thereby demonstrating their intent that such a breach be considered material, regardless of the Court's opinion on the matter. *See RW Power Partners*, 899 F. Supp. at 1499-1500 (describing authority allowing for

14

termination of contract where cancellation clause explicitly defined the breach which permitted termination). Because the breach, if proved, was material, the common law rule disallowing termination of a contract for an immaterial breach is inapplicable. Thus, the conversion claim will survive this motion.[3]

### C. Tortious Interference with Contract

The third count of McClain's complaint is alleged against MPT for tortiously interfering with the noncompete covenant. MPT seeks to dismiss the charge because the pleadings are too conclusory and fail to state a claim for tortious interference with contract under Virginia law. A claim for tortious interference with contract in Virginia requires existence of a valid contractual relationship, knowledge of the relationship on the part of the interferor, intentional interference inducing or causing a breach of the relationship, and damage to the party whose relationship has been disrupted. *DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 144-45, 670 S.E.2d 704, 706 (2009). The interferor cannot be a party to the contractual relationship; it must be a third party. *Id.*

Taking the allegations as true, Carucci and his grandfather established MPT, a company that provides traffic services prohibited under the noncompete agreement, and "Carucci is a director, officer, shareholder and/or employee of MPT." (Pl.'s Compl. ¶¶ 3, 17.) "MPT, acting together with Carucci and/or as the alter ego of Carucci, has caused Carucci to breach certain contractual obligations . . . owed to McClain." (Pl.'s Compl. ¶ 7.) "MPT, having knowledge of the Agreement entered into between McClain and Carucci, improperly induced Carucci to breach the Agreement." (Pl.'s Compl. ¶ 31.) These allegations are insufficient to state a claim for

---

[3] Carucci also seeks to dismiss the conversion claim because the cancellation clause attempts to insulate the covenant not to compete from judicial review, which it argues is abhorrent to Virginia public policy. This contention is only relevant if the Court holds the noncompete covenant to be unenforceable. Having found that the covenant is not facially unreasonable, I need not address this issue at this time.

15

which relief can be granted because, as stated above, the party interfering with the contractual relationship must be a third party. MPT cannot act together with Carucci, or as Carucci's alter ego, to induce Carucci to breach the noncompete covenant. McClain has essentially pleaded that Carucci induced himself to breach the covenant. Moreover, the pleadings are overly conclusory in their description of the manner in which MPT caused Carucci to violate the Agreement, which adds to the confusion over the degree of independence of MPT's actions. I will dismiss the tortious interference with contract count without prejudice and grant McClain leave to amend the complaint as to this count so that McClain has an opportunity to clarify its pleadings if it so desires.

### IV. CONCLUSION

For the reasons stated herein, the Court will grant in part and deny in part Defendants' motion to dismiss, as follows:

- The motion to dismiss the breach of contract claim (count one) will be denied.
- The motion to dismiss the conversion claim (count two) will be denied.
- The motion to dismiss the tortious interference with contract claim (count three) will be granted without prejudice. Leave to amend the complaint will be granted.

An appropriate order will follow. The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ___4th___ day of May, 2011.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE